# Byers *v.* Baltimore & Ohio Railroad Company, Appellant.

*Railroads—Sparks—Evidence—Burden of proof.*

In an action against a railroad company to recover for the destruction of property by fire from sparks, it devolves upon the plaintiff to prove by a preponderance of evidence that the fire was communicated by sparks or cinders from the railway engine. It need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over defendant's railway, and the evidence may be wholly circumstantial; as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines, and, second, facts tending to show that it probably originated from that cause, and from no other.

In such a case where the plaintiff is suing for the destruction of a barn, the question of the defendant's liability is for the jury, if there is evidence tending to prove that it was possible for fire to reach the barn from defendant's engine; that sparks as large as hickory nuts were seen escaping from a locomotive which passed just before the fire; that the wind blew towards the building; that a few moments before the fire the sound of something falling upon the porch of the house or porch roof was heard, and at least one cinder, hot and smoking, was seen on the porch of the house, about as far from the track as the barn; that the fire was discovered on the shingle roof of the barn on the side next to the railroad, a few moments after the train had passed; and that the spark arrester on the engine in question, when examined two or three days afterwards, showed signs of fresh repair.

In an action against a railroad company to recover for the destruction of property from the escape of sparks, the plaintiff may testify that he examined the engine which was alleged to have caused the fire, two or three days afterwards, and found that the spark arrester showed signs of fresh repair.

In such a case where the plaintiff testifies that he had seen a hot cinder fall on his porch, and testifies that it was one of three cinders shown, and a witness for defendant testifies that large sparks or cinders would not escape through a spark arrester in good condition, such witness may be shown on cross-examination the smallest of the three cinders for the purpose of establishing or fixing by comparison the size of cinders that could pass through the meshes of a properly equipped spark arrester.

Any article made important by evidence, or by the nature of the investigation may be produced or inspected.

Argued Oct. 13, 1908. Appeal, No. 128, Oct. T., 1908, by defendant, from judgment of C. P. Lawrence Co., Dec. T., 1905, No. 95, on verdict for plaintiff in case of Horace D. Byers v. Baltimore & Ohio Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for destruction of plaintiff's barn by fire alleged to have been caused by sparks escaping from a locomotive. Before WILLIAM E. PORTER, P. J.

At the trial plaintiff was asked this question:

"Q. State whether or not you observed the netting called the spark arrester? A. I did. Q. What condition was it in?"

Objected to by defendant's counsel because this alleged examination occurred two or three days after the alleged damages occurred and it is incompetent to show its condition on the day of the alleged injury.

Plaintiff's counsel proposed to show by this witness that he watched for this engine until it returned to the terminal at New Castle Junction and before it made another trip he examined it, and that the spark arrester had been patched and repaired and the patch was new, and that the engine had not been used from the time it was patched until witness saw it. This for the purpose of showing that the spark arrester was in bad condition at the time of the fire at the plaintiff's buildings.

Defendant's counsel object as incompetent and for the reason that the witness has not yet testified that the engine had not made another run before this alleged examination was made.

The Court: It might not be positive evidence, but it would be some evidence as to the condition the engine was in.

Mr. McCaslin: If the witness knows that the engine was not out after the run of January 17.

Mr. Aiken: We propose to show that by the condition the patch was in.

The Court: We will allow the witness to answer and seal an exception for the defendant. [1]

"A. I went down on that morning, had the front opened and noticed that the bolts and the box of this front end had been open, because the threads were bright and we got the door opened and seen the front end and it was in good condition when I looked at it."

J. B. Daugherty, a witness for defendant, was asked on cross-examination this question:

"Q. I show you now three cinders, being exhibit 'A,' among which is one testified to by the plaintiff that as the engine passed his premises it struck the porch and was hot and that he afterwards picked it up and it is included among the three. I therefore ask you whether the smallest of those three cinders could pass through the netting of a Mulfeld spark arrester that was in good condition on January 17, 1905."

Objected to by defendant's counsel for the reason that the plaintiff did not testify that the spark was hot, and for the further reason that the cinders in question have been excluded from the evidence by the court. Further, that the plaintiff has not identified any one of those cinders as the one which he claims dropped on his property at the time when the train passed.

The Court: The witness may answer the question and an exception is sealed for the defendant. [2]

"A. No, sir, it couldn't."

M. S. Parker was asked this question on cross-examination:

"Q. I now show you three cinders or coals marked exhibit 'A,' one of the cinders being the one that the plaintiff noticed rolling on his porch as the train passed by his premises, and I ask you whether the smallest of those coal cinders could pass through the netting of that spark arrester on engine 1367, if the spark arrester was in good condition?"

Objected to as improper cross-examination on the evidence in this case.

The Court: The witness may answer and an exception sealed for the defendant. [3]

"A. No, sir."

Defendant presented this point:

9. Under all the evidence in this case the verdict of the jury should be for the defendant. *Answer:* The ninth point is refused, so we will not read it to the jury. [4]

Plaintiff presented these points:

3. If the jury find from the evidence in this case that the defendant's locomotive No. 1367 passed along the plaintiff's premises a few minutes before the discovery of the fire and that said locomotive was emitting sparks as large as a hulled hickory nut, which were seen in the air and smoke at a height of from fifty to sixty feet, and if they also find that there were cinders from said locomotive that were larger than would pass through a spark arrester in good condition that was carried as far distant as the house which was as far distant as the barn from the railroad, and if the jury so find they would also be warranted in finding that the spark arrester in locomotive No. 1367 of the defendant company was deficient and not in good repair and that the defendant company was thereby negligent and that the barn of the plaintiff was set on fire by the sparks emitted from said locomotive. *Answer:* We cannot approve or affirm this point as stated, but with a very slight change we can affirm it and we will read the point and affirm it as we believe the law to be:

If the jury find from the evidence in this case that the defendant's locomotive No. 1367 passed along the plaintiff's premises a few minutes before the discovery of the fire, and that said locomotive was emitting sparks as large as a hulled hickory nut which were seen in the air and smoke at a height of from fifty to sixty feet, and if they also find that there were cinders from said locomotive that were larger than would pass through a spark arrester in good condition that were carried as far distant as the barn from the railroad, the jury would also be warranted in finding that the spark arrester in locomotive No. 1367 of the defendant company was deficient and not in good repair and that the defendant company was thereby

negligent and that the barn of the plaintiff was set on fire by the sparks emitted from said locomotive. As thus stated we affirm the point. [5]

4. The evidence in this case is that the barn and the house were on the same side of the railroad, each equally distant not to exceed 237 feet from the railroad track of the defendant company, and the house being about 100 feet from the barn, and if the jury find that locomotive No. 1367 of the defendant company as it passed along the plaintiff's premises a few minutes before the fire was discovered, emitted sparks and cinders of a larger size than would pass through a spark arrester in good condition, from the smokestack of the locomotive, and some of them were carried as far distant as the house, the jury would be warranted in finding that the spark arrester of the defendant's locomotive No. 1367, was not in good condition and that the defendant company was guilty of negligence and under all the evidence the jury may find that the plaintiff's barn was burned by the sparks emitted from the defendant's said locomotive. *Answer:* Affirmed. [6]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4–6) above instructions, quoting them.

*Wylie McCaslin,* with him *U. G. DeFord,* for appellant.—It cannot be held that the fact that a fire took place in the immediate vicinity of the railroad shortly after the passing of an engine is prima facie evidence of negligence and therefore the case should be submitted to the jury: Jennings v. Penna. R. R. Co., 93 Pa. 337; Reading, etc., R. R. Co. v. Latshaw, 93 Pa. 449; Taylor v. Pa. Schuylkill Valley R. R. Co., 174 Pa. 171.

It devolves upon the plaintiff to prove by the preponderance of the evidence that the fire was communicated by sparks or cinders from the railway engines: Henderson v. Railroad Co., 144 Pa. 461.

In the case of mere negligence with no malice, to ascertain whether the negligence be the proximate cause of the injury,

it must appear that the injury was the natural and probable consequence of the negligence: Yoders v. Amwell Twp., 172 Pa. 447; Scott v. Allegheny Valley R. R. Co., 172 Pa. 646.

*Robert K. Aiken,* with him *J. Clyde Gilfillian,* for appellee.— Under all the evidence in this case it was clearly one for the jury: Henderson v. Railroad Co., 144 Pa. 461; Huyett v. Railroad Co., 23 Pa. 373; Penna. Co. v. Watson, 81* Pa. 293; Van Steuben v. Cent. R. R. Co., 178 Pa. 367; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10; Thomas v. Railroad Co., 182 Pa. 538; Howard Express Co. v. Wile, 64 Pa. 201; Citizens' Pass. Ry. Co. v. Foxley, 107 Pa. 537; McCafferty v. Railroad Co., 193 Pa. 339.

It is the duty of companies to control their engines carefully, to adopt every known safeguard and to avail themselves from time to time of every approved invention to lessen their danger: Frankford, etc., Turnpike Co. v. Phila. & Trenton R. R. Co., 54 Pa. 345; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122.

OPINION BY MR. JUSTICE POTTER, January 4, 1909:

Plaintiff in this case is the owner of a farm adjoining the tracks of the defendant company. Upon this farm stood his barn, 229 feet north of the railroad track, and his house was located about the same distance from the railroad, and about 100 feet away from the barn. On January 17, 1905, in the forenoon, the barn and other outbuildings caught fire and were destroyed. A relief train of the defendant passed the location of the property a few moments before the fire was discovered. The plaintiff charged the defendant company with negligence, in that it had not provided the locomotive of the relief train with an efficient spark arrester, and that by reason of its neglect and oversight in this respect, sparks of unusual size escaped from the locomotive, and set fire to the buildings. He therefore brought this action to recover from the defendant company the damages sustained in the loss of the property. At the trial, plaintiff testified that he was sitting in his house just before the time of the fire, and saw the relief train pass by; and that he noticed the smoke blow from the railroad towards

his buildings, and heard the sound of something dropping upon his porch. He looked out and saw a cinder, warm and smoking, roll along the porch. This cinder and two others were picked up on the porch by plaintiff after the fire, and were preserved and produced in court. A few moments after plaintiff saw the train pass and heard the sound of something dropping, the barn was seen to be on fire. One witness testified that he saw the train pass shortly before he noticed the fire on the barn roof, and that the locomotive was then throwing out sparks as large as hickory nuts. There was also testimony that a locomotive properly equipped with a spark arrester would not throw out cinders or sparks of the size described by plaintiff's witness. Plaintiff further testified that two or three mornings after the fire, he examined the engine which had passed his place at the time of the fire, and that the wire netting comprising part of the spark arrester on the locomotive gave evidence of having been newly patched.

The trial judge refused to give binding instructions for the defendant, and submitted the question of defendant's negligence to the jury, who found for the plaintiff. This appeal is by defendant, and the fourth, fifth and sixth assignments raise the question whether there was any evidence of negligence sufficient to be submitted to the jury. The law governing this class of cases wherein recovery is sought for a loss by fire, caused by sparks from a locomotive engine of a railroad company, has been thoroughly considered in Pennsylvania, and is well settled. A very thorough and elaborate discussion of the subject by Justice CLARK is found in Henderson v. Railroad Co., 144 Pa. 461, where, upon page 479, the following statement of the rule is quoted with approval: " It devolves upon the plaintiff to prove by a preponderance of evidence that the fire was communicated by sparks or cinders from the railway engine. It need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over defendant's railway, and the evidence may be wholly circumstantial; as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines; and, second, facts tending to show that it probably

originated from that cause, and from no other." And, as applicable to a state of facts similar to those in the case now before us, the law was again succinctly stated in Elder Township School District v. Penna. R. R. Co., 26 Pa. Superior Ct. 112, where HENDERSON, J., said (p. 114): "While the burden is on the plaintiff to prove that the fire was negligently communicated by some engine of the company, the fact may be shown by circumstantial evidence. Given the passing train, the accumulated combustible material, the fire breaking out therein within a few minutes after the train had passed and communicating directly with the plaintiff's building, there exists a state of facts from which the jury would be authorized to draw the inference of negligence on the part of the defendant." Under these authorities and many others to the same effect, which might be cited, we have no doubt as to the sufficiency of the evidence in this case to justify its submission to the jury. There was evidence tending to prove that it was quite possible for fire to reach the plaintiff's property from the defendant's engine. That sparks as large as hickory nuts were seen escaping from the locomotive which passed just before the fire. That the wind blew towards the buildings. That, a few moments before the fire, the sound of something falling on the porch or porch roof was heard, and at least one cinder, hot and smoking, was seen on the porch of the house, about as far from the track as the barn. That the fire was discovered on the shingle roof of the barn on the side next to the railroad, a few moments after the train had passed. There was further testimony tending to show that the spark arrester on the engine in question when examined two or three days afterwards, showed signs of fresh repair.

If the testimony in these respects was believed by the jury, it was sufficient to justify the inference that an imperfect and inferior spark arrester was used, and that the fire resulted from this fact.

In the first assignment of error counsel for appellant questions the admissibility of plaintiff's testimony, as to the condition of the spark arrester upon the engine, when he saw it, two or three days after the fire, and when the appearances indicated

the recent repair of the netting. The evidence that the engine threw out sparks of the size described was in itself enough to carry the case to the jury, upon the question of whether the spark arrester was in good condition: Phila. & Reading Ry. Co. v. Shultz, 93 Pa. 341; Penna. Co. v. Watson, 81* Pa. 293. And the further showing that a few days later the wire netting in the spark arrester exhibited signs of recent repair, taken in connection with the proof of large sparks thrown out upon the day of the fire, fairly warranted the inference that there had been an opening in the spark arrester, which was subsequently covered by the patch which the plaintiff said he saw. For that purpose the testimony was clearly admissible. "It has been held that on account of the general nature and circumstances of cases involving the liability of railroads for fires, a greater liberality in the admission of evidence is permitted, both as to the origin of the fire and the defendant's negligence, than in other cases of damages for tortious injuries. There is no doubt that a plaintiff may show the defendant's liability for damages by fire by circumstantial evidence merely. As defects in an engine and negligence in its management, it has been said, are matters peculiarly within the knowledge of the company, it is not reasonable to expect of a stranger direct evidence of the defects or negligence:" 13 Am. & Eng. Ency. of Law (2d ed.), 510, 511.

In the second and third assignments of error, complaint is made of the action of the trial judge in permitting the cross-examination of defendant's witnesses with regard to three cinders which were shown them. They were asked if the smallest one of the three cinders could pass through the netting of the spark arrester if it was in good condition. The three cinders had not been admitted in evidence, for the reason that the plaintiff could not identify the particular one he had seen fall hot upon the porch. But he testified that it was one of the three, and the inquiry was confined to the smallest one. So that no harm was done to defendant in this respect. The witness had testified that large sparks or cinders would not escape through a spark arrester in good condition. On cross-examination, counsel might then properly have shown him

any object, whether in evidence or not, for the purpose of establishing or fixing by comparison, the size of cinders that could pass through the meshes of a properly equipped spark arrester. "Any article made important by evidence or by the nature of the investigation may be produced for inspection. . . . A witness may use his own body or that of another person or any article to illustrate the evidence:" 17 Cyl. L. & Pr. 292, 293.

The assignments of error are all overruled, and the judgment is affirmed.