## Hornick et al. *v.* Bethlehem Mines Corporation, Appellant.

Argued October 6, 1932.  Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. C. Davies* and *John J. Heard,* with them *Reed, Smith, Shaw & McClay,* for appellant.—A new trial may be granted after the term of court even though fraud is not averred: Wilson v. Buchanan, 170 Pa. 14; Salus v. Fogel, 302 Pa. 268, 271; Penna. Stave Co.'s App., 225 Pa. 178; Cochran v. Eldridge, 49 Pa. 365; Kellogg v. Krauser, 14 S. & R. 137; Koch v. Biesecker, 7 Pa. Superior Ct. 37.

*Frank P. Barnhart,* with him *Samuel R. DiFrancesco,* for appellee.—The refusal by the trial court of a new trial will not be reversed in the absence of a clear abuse of discretion, especially where the petition is based on alleged after-discovered evidence which is merely cumulative: Knickerbocker Ice Co. v. R. R., 253 Pa. 54; Com. v. Delfino, 259 Pa. 272.

A new trial will not be granted where the evidence is merely corroborative or cumulative: Donnelly v. Penna. Co., 252 Pa. 175; Limper v. Electric Co., 297 Pa. 204.

The court has no power to open a judgment after the expiration of the term in which it was entered: King v. Brooks, 72 Pa. 363; Fisher v. Ry., 185 Pa. 602; Penna. Stave Co.'s App., 225 Pa. 178.

OPINION BY MR. JUSTICE LINN, January 3, 1933:

This appeal is from the refusal to open judgment, and to grant a new trial on the ground of after-discovered evidence. The petition was filed after the term at which judgment was entered and after it was affirmed by this court.

Suit was brought in trespass in June, 1930, to recover compensation for damage to springs on plaintiffs' farm alleged to have been caused by defendant's mining operations. The defense was that the interference with the flow of the springs resulted from drought and not from mining. The issue so made was tried in January, 1931, with a verdict for plaintiffs; January 20, 1931, a motion for a new trial was made; April 24, 1931, supplemental reasons for a new trial were filed. This motion was not disposed of by the court below until January 4, 1932, when judgment for plaintiffs followed. An appeal to this court was taken to March Term, 1932, and was argued March 21, 1932. The judgment was affirmed April 11, 1932 (see 307 Pa. 264). On April 28, 1932, a petition for reargument was filed in this court; it was refused May 9, 1932. On May 17, 1932, the petition to open was filed in the court below; plaintiffs demurred;

the petition was dismissed and the present appeal was taken.

Judgment was entered January 8, 1932, during December term. The next term of court began on the first Monday of March, 1932. The petition contained no averment that the judgment was procured by fraud or was otherwise subject to any jurisdictional infirmity; nor was any equitable ground of interference alleged. Ordinarily the term rule would be sufficient to justify the action of the court: Fisher v. Ry. Co., 185 Pa. 602, 40 A. 97; Penna. Stave Co.'s App., 225 Pa. 178, 73 A. 1107; Salus v. Fogel, 302 Pa. 268, 153 A. 547. But as the appeal to this court was taken in time to make it a supersedeas during the term at which judgment was entered (the effect of which on the term rule we need not decide) we have considered the application on its merits. "To entitle a defendant to a new trial on this ground [after-discovered evidence] the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted: Com. v. Brady, 76 Pa. Superior Ct. 488; Com. v. Carter, 272 Pa. 551; Com. v. Flanagan, 7 W. & S. 415. Such an application is not governed by the strict technical rules applicable to a writ of error, but is addressed to the sound discretion of the court (Boyd v. Boyd, 1 W. 365, 366), and the exercise of this discretion by the court in refusing a new trial will be reversed on appeal only where it has been clearly abused: Com. v. Hine, 213 Pa. 97 [62 A. 369]; Hunter v. Bremer, 256 Pa. 257, 266 [100 A. 809]:" Com. v. Mellon, 81 Pa. Superior Ct. 20, 26.

The petition to open the judgment avers that: "Since the trial......defendant has learned,.....that said springs have not been destroyed by any acts of defendant ......but that......when shortly after said trial, rain-

fall set in, said springs began to flow in a normal and natural manner; that at all times since the summer and fall of 1931 having been a season of normal though not excessive rainfall, said springs flowed freely and normally......that such condition now continues...... That the official figures of the......weather bureau ......for the year 1931 in the general vicinity of plaintiff's land, were not available......until about March 1, 1932......;" that "had these figures been available at the time of the trial, defendant would have offered them in evidence and they would have conclusively shown, and will show, if defendant is permitted to offer them hereafter, that the 1931 rainfall upon and in the vicinity of plaintiff's land was merely a normal rainfall and did not and could not have off-set or made up for the effects of the unusual and disastrous drouths of 1930 which accentuated the effect of the drouths of the several preceding years......;" that with such evidence the verdict would probably be for defendant.

In affirming the judgment when the case was here before, we said: "......the court was justified in submitting to the jury the question whether or not the drying-up of plaintiffs' springs was caused by defendant's mining operations." As the defendant contended at the trial that the prolonged drought during 1928, and subsequent years, and not the mining, caused the damage, it seems clear that the alleged after-discovered evidence is merely cumulative and corroborative.* But that is not the only

---

* In the petition for reargument filed in this court in April, 1932, appellant states: "One of plaintiffs' mining engineers testified that the severe drouth of 1930 would be sufficient cause for the springs going dry, and that there was not sufficient water shed to feed the springs in the drouth of 1930. The other mining expert stated that if these springs became dry for the first time in 1930, it might be due to the drouth. We submit that the remarkable coincidence in this case was the failure of the springs, which corresponded exactly with the severe drouths. That it was the most probable cause of the failure to plaintiffs' springs is evidence by plaintiffs' own testimony." Later on in the petition, the following is stated: "In

fact for consideration in determining whether there was abuse of discretion below. It will be noticed that in its petition, defendant does not state specifically when it learned the alleged fact on which it grounds its application; it merely avers that the evidence was discovered "since the trial;" as time is one of the decisive elements in the consideration of the question, such an indefinite statement of the time of discovery is without value. Then, too, petition does not aver why the data collected from day to day by the representatives of the weather bureau in the vicinity were not available from time to time, as gathered, as is generally the case. It is to be observed, too, that no reason is given for not moving on or about March 1, 1932, as soon as the information is said to have been acquired. At that date, by appropriate petition, defendant could have brought the matter to the attention of this court before the appeal was disposed of on the merits as appellant then presented them. Instead of applying to the court below, as defendant apparently might have done, during the long period between the date of the verdict, January 17, 1931, and the time of taking the appeal to this court, January 29, 1932, or of thereafter applying to this court prior to argument March 21, 1932, as was done, for example, in Ralston v. Phila. Traction Co. (No. 2), 267 Pa. 278, 282, 110 A. 336), or prior to the decision of April 11, 1932, defendant filed a petition for reargument, as has been stated, and even then said nothing about the alleged after-discovered evidence. In such circumstances, we cannot say that

our case the testimony points to the drouth as the proximate cause of the loss of plaintiffs' springs. It was at least equally probable that it was the cause of the failure of plaintiffs' springs, and not the mining of the coal underneath. It is also at least equally probable that the severe blasts the old building received from the winds and storms loosened the shingles on the roof, which is emphasized by the fact that the roof required repairs due to the loosening of the shingles long before the mining and blasting complained of, and it is probable that the shaking of the building by storms caused the cracks complained of in the cellar floor and walls."

there was abuse of discretion in dismissing the petition: Hinman v. Hinman, 283 Pa. 29, 32, 128 A. 654; Ice Co. v. R. R. Co., 253 Pa. 54, 66, 97 A. 1051; Com. v. Delfino, 259 Pa. 272, 280, 102 A. 949.

Order affirmed.

Justices SCHAFFER and MAXEY dissent.

CONCURRING OPINION BY MR. JUSTICE KEPHART:

I concur with the majority in its opinion for the following reasons: When the case was first tried the landowner contended the springs were permanently dry as a result of defendant's mining, while the mining company claimed the great drought made them dry and when it rained the springs would return. Since the trial, heavy rains have set in, the springs have come back and are now flowing, and this is the item of proof now sought to be introduced by the petition. There can be little doubt but that the absence of water on the farm played a large part in the verdict though there were other elements of damage. The application to open the judgment and petition for a new trial were refused by the court below in an opinion by Judge McCANN.

A petition to open judgment for this purpose is an appeal to the equitable powers of the court below. The decision is peculiarly within the discretion of that court, and this court will not interfere with its decision unless the discretion lodged in the judge is abused: Augustine v. Wolf, 215 Pa. 558. An abuse of discretion appears where there is a clear and manifest disregard of the facts or law. The judges who hear applications of this sort must assume the absolute and full responsibility for the conclusion reached. It has long been held that in certain spheres of judicial activity a court of first instance has full and complete authority to act, subject only to correction for an unwarranted abuse of power. This appeal presents that situation.

Did the court below, through the opinion of Judge McCANN, abuse its discretion in refusing a new trial?

To hold that the court below abused its powers in a case where the probable effect of the new evidence upon the vital issue in the prior trial is disputed takes away from the trial court all responsibility for its acts. Such responsibility is thereby transferred to the appellate court, in derogation of the basic theory of the relation of appellate to trial courts in matters within the latter's discretion.

As a hearing judge with no other matter before me, I would be strongly inclined to hold that the mining company should be permitted to show that the spring was running again in full force, but to do it as an appellate court judge, with disputed evidence and in view of statements as shown in Judge McCann's and the majority opinion of this court on which the application for a new trial must rest, would simply be to set aside rules of law well and reasonably grounded in our judicial system. Moreover, the reappearance of the flow of water is subject to another consideration: when the effect of normal rains disappears, it may again cease, a condition that never arose before defendant's mining operations. Such a course of procedure leads to confusion and difficulty and condemns many prior decisions based on these principles. Fixed legal rules should not be set aside in hard cases.

Another serious difficulty is encountered. While every person is entitled of right to one trial in which he has his day in court, a second trial is not a matter of right but of grace and will be granted during term time only when the first trial is shown to have been improper through fraud or any circumstance connected with the trial which appeals to the trial court: Gazzam v. Reading, 202 Pa. 231, 237. When a new trial is granted in term time the discretion thus exercised will not be questioned.

Here the term was passed and the judgment affirmed by this court. To secure another trial after the term has ended, the path of the moving party is beset with

grave and serious difficulties. The petitioner must allege fraud in connection with the first trial which prevented a fair submission of the controversy to the jury. No such allegation is made here, but it is suggested that in addition to fraud as ground for a new trial after term time, mistake in trial would be sufficient to justify a reversal, and that the present existence of the springs shows that the verdict was based on a mistake of fact.

As the reappearance of the springs was plainly a fact that came into being since the trial, it was after-discovered evidence, but the substantive facts underlying the evidence were before the court. This item supplemented defendant's proof in that physical facts would now show what inference alone then showed. Courts will go some distance to correct manifest wrong in trials, but, as the majority opinion sets out and as Judge McCann notes, the facts of the springs' existence and the reason they did not flow were all matters contested before the court in the first trial. While the demurrer to the petition may admit facts as well pleaded, such demurrer does not remove or change the facts in the record of the trial. They are the primary and fundamental basis of the action.

The ruling contended for is novel: that after a trial is ended, and term passed, the losing party may years after come in and say a mistake, without regard to its importance, was made in the trial and obtain a new trial. Few trials are had without mistakes, many are more grave and serious than this so-called mistake. The supposed mistake is no more grievous than in many cases where in the interest of the public trials must end and a new trial cannot be had. The unfortunate consequences of an adoption of appellant's position are well stated by FITZGERALD, J., in Fogel v. I. R. T. Co., 103 N. Y. S. 977, when he says: "The granting of the motion under the exceptional circumstances may tend to imperil the security of judgments, may lead to interminable delay in arriving at definite determinations in actions, may be pro-

ductive of multitudinous and exasperating applications for new trials in cases, particularly where verdicts rest in any degree upon expert evidence as to future resultant conditions reasonably to be apprehended,—thus swelling the volume of litigation and largely increasing the labors of the courts."

The situation is somewhat analogous to personal injury cases, where it is testified that a person has been permanently injured and after the trial and verdict and money paid, the permanent condition is reduced to partial disability. While some courts have allowed a new trial, it has usually been where the recovery of the plaintiff is so rapid as to suggest fraud (45 L. R. A., N. S. 87), and no judgment in this State to my knowledge has ever been opened for another trial under such circumstances after term time. However, the rule first stated applies, namely, the court below, through Judge Mc-Cann, having passed on this question, its decision is controlling under the circumstances appearing here.

Dissenting Opinion by Mr. Justice Maxey:

When this case was previously before this court we said: "While the case before us is a rather close one, we think that according to the tests of every-day experience the court was justified in submitting to the jury the question whether or not the drying up of plaintiffs' springs was caused by the defendant's mining operations" beneath the plaintiffs' farm. Whether the connection between the mining operations and the drying up of the springs was causal or coincidental was entirely a matter of inference at that time. The evidence was purely circumstantial.

On April 11, 1932, we affirmed the judgment of the court below for $10,000 which plaintiffs obtained against defendant.

On May 17, 1932, the defendant filed a petition setting forth, inter alia, that "since the trial of said case, the defendant has learned the all-important and material

fact, which defendant does not believe will be disputed by plaintiffs, that said springs have not been destroyed by any acts of the defendant or otherwise but that on the contrary, when, very shortly after said trial, rainfall set in, said springs began to flow in a normal and natural manner; that at all times since, the summer and fall of 1931 having been a season of normal though not excessive rainfall, said springs flowed freely and normally, supplying plaintiffs' farm and farm buildings with all plaintiffs' requirements of water and overflowing in the normal manner and to the normal extent; that such condition now continues, and that at all times plaintiffs have been aware of the same and have been using the water from said springs in the normal and usual manner."

To this petition the plaintiffs demurred, thereby admitting all of the facts pleaded.

These facts being thus admitted, it appears to me that the defendant is paying plaintiffs $10,000 for alleged damages never sustained and it is therefore entitled to the redress it is asking for at the hands of the court below, which redress is that judgment should be opened, the verdict set aside and a new trial granted.

This is not a case where a litigant seeks a new trial upon after-discovered evidence which by diligence might have been discovered earlier. Defendant could not have discovered that the plaintiffs' springs had resumed their normal flow until there had been a season of normal rainfall and until there was available data covering at least several months. It appears to me that defendant acted with all of the diligence required under the circumstances. The verdict of the court below was obtained on January 12, 1931. This judgment was not affirmed by the Supreme Court until fifteen months later, i. e., on April 11, 1932. Defendant's petition for reargument was refused by this court on May 9, 1932. Petition for rule to open judgment was filed on May 17, 1932, eight days thereafter. This to me indicates rather unusual

diligence by the defendant. The majority opinion says: "It is to be observed, too, that no reason is given for not moving on or about March 1, 1932, as soon as the information is said to have been acquired. At that date, by appropriate petition, defendant could have brought the matter to the attention of this court before the appeal was disposed of on the merits as appellant then presented them."

I think the defendant can not be justly criticized for waiting until the Supreme Court had passed on the question then under its consideration before moving in the court below for the opening of the judgment. The defendant had an undoubted right to go before the court below when the record was remitted to it and ask that the judgment be opened. Surely the delay from March 1, 1932, when defendant was convinced that the springs had resumed their normal flow, to May 17, 1932, when they moved for the opening of judgment, a period of only two and a half months, is not unusual measured by the speed with which legal matters are customarily handled.

Furthermore, if there was any delay in this case the plaintiffs were not in the slightest degree harmed by it. If defendant is amerced of $10,000 for alleged damages which are proved by subsequent natural events to have been mythical, this court should brook no delay in undoing that injustice. The damages claimed and secured by the plaintiffs were supposedly based on facts; it is now admitted (for that is the effect of the demurrer) that they were based merely on erroneous conjecture.

In our opinion filed April 11, 1932, we said: "The testimony as to the drying up of the springs is as follows: 'A' spring began to fail in June or July, 1927, after that there was water in it only during extremely wet seasons. This spring was never as strong as before 1927. 'B' spring began to dry up in the summer of 1928 and the water in it was never afterwards sufficient for domestic use. 'C' and 'D' springs began to dry up about July,

1930, and in November of that year they became entirely dry."

When this summary of plaintiffs' testimony, which resulted in a verdict for them, is contrasted with the facts alleged in defendant's petition and admitted by the demurrer "that at all times since, the summer and fall of 1931 having been a season of normal though not excessive rainfall, said springs flowed freely and normally, supplying plaintiffs' farm and farm buildings with all plaintiffs' requirements of water and overflowing in the normal manner and to the normal extent; [and] that such condition now continues......," the conclusion is to me inescapable that the legal damages alleged by plaintiffs and on which the judgment of $10,000 was predicated were absolutely nonexistent, and that the dryness of plaintiffs' springs between 1927 and 1932 was due to an act of God (i. e., a season of drought) and not to the acts of defendant.

As the dissenting opinion of Judge GREER of the court below well expresses it: "The petition [of defendant] alleges neither fraud nor after-discovered evidence, at least not evidence that could by any possibility have been produced at the trial, but it does aver mistake. It alleges an act of nature not discernible until after final judgment, which under the pleadings is not denied. It is not inherent or included in the case at the time of the trial, but lay outside it, incapable of exact proof and only brought to light after the judgment was rendered. In point of fact it was nonexistent, and only came to life when normal conditions once again obtained. It meets the test of equity because (under the pleadings) the party could not have availed himself of the evidence at the trial, and is also now found to be clearly unjust. ...... As the pleadings now stand the springs are admittedly back in full force and vigor, and if this be true, a wrong was inadvertently done defendant which it is the privilege if not the duty of the court, in the exercise of its equitable powers, to correct to the extent at least

238

of overruling the demurrer and having plaintiff answer over. If, after testimony shall have been taken on the rule, a different set of facts is shown, and it is found that the evidence submitted is intrinsic and not extrinsic, and collateral to the questions formerly brought before the court, then the rule to open the judgment should be denied, otherwise a new trial will be a mater of simple justice."

I agree with Judge GREER and I would accord the defendant an opportunity to show that the springs whose alleged destruction by defendant's mining operations resulted in a judgment of $10,000 in favor of plaintiffs against defendant have resumed their natural flow and that the plaintiffs did not sustain the damages claimed.

Mr. Justice SCHAFFER joined in this dissent.