## Commonwealth v. Germond

*Joseph J. Nelson,* District Attorney, for Commonwealth.

*Joseph P. Valentino,* for defendant.

ACKER, J., September 28, 1972.—Defendant was found guilty by a jury of pool selling and book making. He has moved for a new trial and in arrest of judgment in a joint motion setting forth the same grounds in each. Although seven reasons were assigned in the joint motion, defendant now presses the sole issue that the court erred in calling the jury in for additional instructions when informed that they were a hung jury. The time element of importance is as follows: The jury was sworn on Thursday, March 16, 1972, at 2:14 p.m. The charge was completed and the

tipstaffs were sworn at 11:54 a.m. the following day, Friday, March 17, 1972. Shortly thereafter, the jury went to lunch and returned approximately 12:45 p.m. to commence their deliberations. At 4:17 p.m., counsel for both sides were gathered in the court's chambers when Mr. Matthews, the tipstaff, reiterated to the court that the foreman reported that the jury was hung and that "they had people on the jury that absolutely refused to change their decision." The court informed the attorneys that it contemplated following the Standards Relating to Trial by Jury of the American Bar Association Project on Minimum Standards for Criminal Justice, section 5.4, at page 146, subsection (d), which gives to the court the discretion to instruct the jury to continue their deliberations and to repeat, if not already given, subsection (a) of the Standard 5.4. This standard had previously been given in the charge itself. The court informed counsel that it did not believe that the jurors had deliberated sufficiently long and it was concerned that if the jury was discharged defendant would contend double jeopardy. Both counsel were informed that if they both agreed on the record that they were willing to permit the jury to be brought in without a verdict and that defendant be tried again on the same charge, the jury would be dismissed at that time. Otherwise, the court planned to give them additional instructions according to the standards. It was suggested to counsel for defendant that he might want to talk to his client and bring him back to the court to put his decision on the record. Counsel objected and moved for a directed verdict, but stated that he would talk to his client. At 4:50 he returned and reported that "We have decided to let them stay out." The jury was then returned to the courtroom over the objection of counsel for defendant and given the standards as mentioned above. The jury was then

asked whether they had any confusion or misunderstanding in their minds as to the law. The foreman responded that he did not think it was the law that was causing them concern but rather the facts. The court informed the jury that it could not help them as to the facts but only the law, for the facts were solely for them as members of the jury to determine. The jury in addition was informed that the court did not intend to keep them out:

". . . until you drop in your tracks or anything like that, but I know by experience that very frequently jurors are out much longer than you have been out, and that often by mature consideration, you can resolve this matter and return a verdict for jurors in similar positions have done that.

"We don't want any verdict that is forced out of any jury in anyway. We want it to be a verdict that is resolved and arrived at by mature consideration from all of you, and it must in fact be unanimous. I am going to suggest to the tipstaff that he make arrangements for your supper, and that he take you to supper as soon as that is practicable, and give you an opportunity to relax a bit, and then go back for further deliberations, and we'll be in contact with you or with the tipstaffs through the course of the evening and we'll see how things are going, but you in my opinion have not deliberated sufficiently long to give a full opportunity to arrive at a verdict in this case, so we're going to return you to the jury room."

This occurred and the jury verdict was returned at 7:40 p.m. of that same evening. By underlining certain portions of the charge and without the citation of any authority to support defendant's contention, it is argued that, in some manner, this jury was coerced into arriving at a verdict.

Our Supreme Court in Commonwealth v. Spencer,

442 Pa. 328, 275 A. 2d 299 (1971), concerning the very standards used in this case stated, page 337:

"We commend these Standards as guidelines for the courts to follow when juries are deadlocked . . . Such guidelines may avoid the evils inherent in the Allen charge and with proper usage may aid in the alleviation of problems which arise when juries are deadlocked."

In a separate dissenting opinion, Mr. Justice Roberts wrote, page 338:

"I endorse without reservation the majority's stated intention to forbid use of the Allen charge in trials that take place after the date of this decision and its approval and commendation for future trials of the jury instructions pertaining to deadlocked juries recommended by the ABA Project on Minimum Standards for Criminal Justice, Trial by Jury, §5.4 (Approved Draft 1968)."

There are certain well-established principles concerning coercion or attempted coercion of juries. A court may not use methods that take the character of a mandate with penalties of both moral or physical suffering for disobedience: Welshire v. Bruaw, 331 Pa. 392, 200 A. 67 (1938). A jury cannot be told to disregard their own conscience for the matter is simply a question of judgment and they should not refuse to return a verdict because of stubbornness or disagreement suggesting that a penalty might be given against them in the nature of exclusion from a jury wheel or posting their unfitness in a public office: Miller v. Miller, 187 Pa. 572, 41 Atl. 277 (1898). However, a mere failure to discharge a jury upon its own request, stating that it is unable to agree upon a verdict, is not coercion: Hinman v. Hinman, 283 Pa. 29, 128 Atl. 654 (1925). Nor causing a jury to deliberate through a night, even though consisting of 10 women and 2 men

where there was no evidence that they did not wish to go on and there was no coercion other than the continued deliberation: Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65 (1959). Nor is it error to tell the jury that it would be unfortunate if they would not be able to arrive at a verdict and that a case of this kind should not be allowed to fail and be retried without a very earnest effort on the part of the jury to arrive at some conclusion: Knickerbocker Ice Company v. Pennsylvania Railroad Company, 253 Pa. 54, 97 Atl. 1051 (1916). On the other hand, if a jury is confused and overworked, it should be permitted to retire and rest: Commonwealth v. Clark, 404 Pa. 143, 170 A. 2d 847 (1961). However, a jury should not be permitted to be discharged before there was absolute necessity or realistic justification for it: Commonwealth v. Baker, 413 Pa. 105, 115, 195 A. 2d 382 (1964).

If the use of the standards of the American Bar Association mentioned above is regarded as coercion of a jury, a court has little if no option except to declare a mistrial and suffer the possibility of a double jeopardy contention. As forcibly brought to trial judges' attention in Commonwealth v. Baker, supra, 114-15:

"The Commonwealth will often be impaled upon the horns of a dilemma. This is not a figment of the imagination. If a Judge discharges a jury before it returns a verdict, the defendant will likely plead at the second trial double jeopardy', unless he has expressly consented to its discharge. On the other hand, if a Judge urges a jury to resume deliberating, and it thereafter brings in a verdict of guilty—the defendant will frequently contend that the jury's verdict was coerced . . .

A Judge must tread cautiously in this highly controversial field, being extremely careful to protect society

and at the same time not to impinge upon or deny a defendant's constitutional rights."

In that case it was held that the judge did dismiss the jury before there was any absolute necessity or realistic justification for its discharge and without the actual or express consent of defendant.

In the case at bar, the court attempted to get defendant to consent to the discharge but he refused. He, therefore, took a gamble and he lost. He cannot under the facts present in this case secure a retrial without a showing of coercion. In this court's opinion, there is absolutely no evidence or grounds upon which coercion can be found.

Wherefore, defendant's motion for new trial and motion in arrest of judgment are both denied.

## ORDER

And now, September 28, 1972, defendant's motion for new trial and defendant's motion in arrest of judgment are both denied.