## Commonwealth *v.* Delfino, Appellant.

*Murder—First degree—Lying in wait—Evidence—Adverse witness — Cross-examination — Evidence of witness's previous statement—Threats—Ill feeling—Remoteness—Admissibility — Motive —Scope of cross-examination of defendant—Improper remarks of district attorney—Failure to object—Dying declaration—Conflicting declarations—Defenses — Alibi — New trial — After-discovered evidence—Cumulative evidence.*

1. Where on the trial of a homicide case one of the Commonwealth's witnesses testifies at variance to his previous statement, it is not error to permit the district attorney to cross-examine the witness as to such statement, or to offer testimony as to what his previous statement was, for the purpose of neutralizing the effect of his testimony. The allowance of such permission is largely discretionary with the trial judge.

2. The remoteness of threats may greatly impair their probative force, but as a rule it does not affect their admissibility.

3. On the trial of an indictment for murder it is competent for the Commonwealth to show that the defendant had formerly boarded with deceased and during such time there had been trouble between them because of which the deceased had ordered the defendant from his home, although such occurrence was two and a half years previous to the homicide. The remoteness goes to the weight rather than the competency of such evidence.

4. Great latitude is permissible in the cross-examination of a defendant.

5. Where a defendant on trial for murder testifies that he had no motive or reason for killing the deceased, the district attorney may ask him questions tending to prove motive, and in that connection to attempt to show that defendant blamed deceased for a wound inflicted upon defendant by a third party, and defendant cannot complain because such examination failed in its purpose,

where it does not appear that the district attorney asked the questions in bad faith or that defendant was prejudiced thereby.

6. It was improper for the district attorney to remark during such examination, "We believe now if this man (the defendant) would answer the questions truthfully we could show that that was the motive for this homicide," but where no objection or exception was taken to such remark at the time, it cannot be made the basis of an assignment of error.

7. The fact that the court in its charge inadvertently stated that a certain witness testified to certain declarations of the victim, where substantially such testimony had been given by other witnesses but not by the witness referred to, is not reversible error where the court's attention was not called to the mistake at the time.

8. The allowance or refusal of a new trial in a homicide case is so clearly a matter within the discretion of the trial court that its action will not be reviewed in the absence of clear error.

9. A motion for a new trial in a homicide case, on the ground of after-discovered evidence, was properly refused where such evidence was largely cumulative and with due diligence might have been discovered before the trial.

10. The fact that the trial judge, in passing upon the motion for a new trial, considered the affidavit of a witness in explanation of his deposition, affords no ground for reversing the judgment.

11. After declarations have been admitted as dying declarations their weight and credibility are for the jury, and where such declarations are contradictory with each other it is the duty of the jury to weigh them and determine which, if any, are to be believed.

12. On the trial of an indictment for murder the evidence tended to show that defendant stepped from behind an abutment of a railroad bridge and fired two shots at deceased, that deceased ran a short distance and made statements charging defendant with the crime for which he was arrested half an hour thereafter near the scene of the shooting. There was evidence that defendant saw deceased shortly before the latter started toward his home, to reach which he would pass under the bridge, and there was further evidence that defendant was seen going toward the bridge shortly before the shooting. On the morning after the shooting a revolver containing three 38-calibre cartridges and two empty shells was found near the railroad tracks sixty rods from the bridge, and on the following day an empty cartridge case was found in the defendant's room with name and number corresponding to that on the cartridges found in the revolver. There was evidence that ill-feeling existed between defendant and deceased prior to the shooting. *Held,* there was sufficient evidence that the murder was committed

by lying in wait, and a verdict of guilty of murder of the first degree will be sustained.

13. In such case the court did not err in charging that "the Commonwealth has shown that this cartridge box was found in the room of the defendant," the word "shown" used in such connection meaning "pointed out or made known by evidence," and not necessarily that the facts referred to had been established.

14. In a homicide case the fact that defendant on the afternoon of the day of the homicide withdrew from the local bank his entire deposit amounting to $200, was a circumstance tending to show preparation for flight and was properly admitted.

15. Where the defense was an alibi attempted to be established by four persons in a store, who stated that defendant was in the store all evening (with the exception of a period of five minutes) until arrested, and it appeared that it would have taken from fifteen to twenty-five minutes to go to the scene of the shooting and return, but such witnesses were busy attending store and estimates made by some of them indicated that what seemed like four or five minutes was in reality twelve to twenty, the court properly charged that if the defendant was gone long enough from the store to have perpetrated the crime and returned, referring to such time as fifteen to twenty minutes, the jury might find him guilty, and further that "if you find from the weight of the testimony, from the preponderance of the evidence, that he (defendant) was not at the scene of the crime at the time of the killing, you must find a verdict of not guilty."

Argued Oct. 8, 1917. Appeal, No. 199, Jan. T., 1917, by defendant, from sentence of O. & T. Lackawanna Co., Oct. Sessions, 1916, No. 1, on verdict of guilty of murder of the first degree in case of Commonwealth of Pennsylvania v. Dominick Delfino. Before MESTREZAT, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Indictment for murder. Before MOSER, P. J., specially presiding.

The facts appear by the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree on which sentence of death was passed. Defendant appealed.

Errors assigned, among others, were various rulings on evidence, alleged improper remarks by the district attorney and the charge of the court.

*Clarence Balentine,* with him *E. T. Philbin* and *H. L. Taylor,* for appellant.—The district attorney should not have been permitted to cross-examine one of the Commonwealth's witnesses.

The court improperly charged on the question of alibi: Commonwealth v. Andrews, 234 Pa. 597; Turner v. Commonwealth, 86 Pa. 54.

The court erred in quoting the defendant as having testified to facts he did not testify to.

*George W. Maxey,* District Attorney, for appellee.— The district attorney is entitled to ask leading questions if the Commonwealth's witnesses should appear to be adverse: Commonwealth v. Wickett, 20 Pa. Superior Ct. 350; Gantt v. Cox & Sons Co., 199 Pa. 208.

Evidence that defendant withdrew his entire bank deposits on the day of the shooting is admissible: Bradshaw v. The State of Nebraska, 17 Neb. 147; Marion v. The State of Nebraska, 16 Neb. 349; Rudy v. Commonwealth, 128 Pa. 500; State of Iowa v. Hossack, 116 Iowa 194; The People v. Willett, 105 Mich. 110; Gaines v. The Commonwealth, 50 Pa. 319; Boyle v. The State, 105 Ind. 469; The People of the State of N. Y. v. Mullen, 163 N. Y. 312; Disque v. The State, 49 N. J. L. 249; United States v. Mullaney, 32 Fed. 370.

The court properly charged on the question of alibi: Commonwealth v. Andrews, 234 Pa. 597; Briceland v. The Commonwealth, 74 Pa. 463.

The fact that the court charged that the Commonwealth had "shown" that the cartridge box had been found in defendant's room did not treat the fact as being established and was not error: Commonwealth v. Razmus, 210 Pa. 609.

The verdict of guilty of murder of the first degree was amply supported by the evidence: Grant v. The Commonwealth, 71 Pa. 495; Commonwealth v. Morrison, 193 Pa. 613; Commonwealth v. Danz, 211 Pa. 507.

OPINION BY MR. JUSTICE WALLING, January 7, 1918:

This is an appeal by defendant from the judgment on conviction of murder of the first degree.

On the evening of April 25, 1916, Daimetro Morobito was shot and killed at the subway where Wayne street passes under the tracks of the Delaware and Hudson Railroad, in Archbald, Lackawanna County. The assassin apparently stepped from behind an abutment and fired two shots, one taking effect in Morobito's breast and the other in his neck. He made an outcry and ran back along the street a short distance where he fell and was carried into a barber shop, and later to a hospital where he died early the next morning. The shooting occurred at 8:15 p. m., and the defendant was arrested about one-half hour thereafter on statements of Morobito charging him with the crime. The arrest was made in Pitea's store about 950 feet from the subway.

We have carefully examined each of the thirteen assignments of error and in our opinion none of them can be sustained. On the allegation that one of the Commonwealth's witnesses testified at variance to his previous statement to the district attorney, that officer was permitted to cross-examine the witness as to such statements. This was a matter largely in the discretion of the trial judge and his allowance of such examination was not error: Gantt v. Cox & Sons Co., 199 Pa. 208; Commonwealth v. Deitrick, 221 Pa. 7. That the defendant, on the afternoon of the day of the homicide, withdrew from the local bank his entire deposit amounting to $200, which with other money he had on his person when arrested, was a circumstance tending to show preparation for flight and as such was properly admitted. It was competent for the Commonwealth to show that defendant had formerly boarded with the deceased at when there had been trouble between them, by reason of which the deceased had ordered the defendant from his home, although such occurrence was two and a half years previous to the homicide. The remoteness

goes to the weight rather than the competency of such evidence: Sayres v. Commonwealth, 88 Pa. 291; Commonwealth v. Salyards, 158 Pa. 501. The remoteness of threats may greatly impair their probative force, but as a rule it does not affect their admissibility in evidence: 21 Cyc. 892; 13 Ruling Case Law, page 925. Besides, here there was some evidence tending to show ill feeling between the parties at a more recent period.

Mr. Mellow, a witness called by the Commonwealth, testified that the two men were at his hotel early that evening and that Morobito left first. The district attorney alleged surprise at this answer, and to neutralize the same was permitted to offer testimony to the effect that Mr. Mellow had previously stated that he thought the defendant left first. This was within the trial court's discretion: Commonwealth v. Wickett, 20 Pa. Superior Ct. 350. And see Roscoe's Criminal Evidence (8th Ed.), page 162. In any event, it became unimportant for defendant expressly testified that he left Mellow's place before Morobito did. Defendant having testified in chief that he had no motive or reason to kill Morobito, it was competent for the district attorney to ask him such questions as might tend to prove motive, and in that connection to try to show that he blamed the deceased for a wound which had been inflicted upon defendant by a third party a short time before the homicide. The cross-examination failed of its purpose, but it does not appear that the district attorney asked the questions in bad faith or that defendant was prejudiced thereby. Great latitude is permissible in the cross-examination of a defendant: Commonwealth v. Racco, 225 Pa. 113; Commonwealth v. Bubnis, 197 Pa. 542; Commonwealth v. Fitzpatrick, 1 Pa. Superior Ct. 518; Commonwealth v. Williams, 41 Pa. Superior Ct. 326. During this examination the district attorney stated that "We believe now if this man [the defendant] would answer the questions truthfully, we could show that that was the motive for this homicide." This was an im-

proper remark, but, as there was no objection or excep-
tion taken thereto, it cannot be made the basis of an as-
signment of error: Commonwealth v. Polichinus, 229
Pa. 311. True, objections were made and exceptions
taken to certain questions asked upon that branch of the
cross-examination, but nothing was said as to the re-
mark of the district attorney.

The sixth and seventh assignments of error are based
upon certain statements in the charge of the court,
wherein reference is made to the contention and theory
of the Commonwealth. But that was not error, as such
contention and theory found some support in the evi-
dence. The fact that the defendant saw the deceased
shortly before the latter started down Wayne street in
the direction of his home, to reach which he would pass
the subway, and where according to his declarations the
defendant stepped from behind the abutment and shot
him, tends to support the contention that the murder
was perpetrated by lying in wait. And the evidence
that defendant was seen shortly before the homicide near
the west end of the foot bridge at Salem street, above
Wayne street, and said he was going home, which would
take him over that bridge, tends to support the theory
that he crossed the river there, and, in connection with
the evidence that he was at the subway, tends to support
the theory that he came there by walking down the rail-
road track.

In addition to his general denial, defendant set
up an alibi and submitted his own evidence and
that of four other witnesses to the effect that he had been
continuously in the store where arrested since before
seven o'clock, except at one time not exceeding five min-
utes when he was called to the door by the chief of police.
To go and commit the crime and return in the manner
the Commonwealth contends he did would take under
ordinary circumstances about fifteen minutes, as he
would travel some four-fifths of a mile. However, the
witnesses to the alibi were busy waiting upon customers

in the store and had no way of fixing the length of time the defendant was absent therefrom, except as an estimate from recollection. And estimates made by some of those witnesses while testifying indicate that what to them seemed four or five minutes was in reality from twelve to twenty minutes. On the question of alibi the court charged, inter alia: "If you find from the weight of the testimony, from the preponderance of the evidence, that he was not at the scene of the crime at the time of the killing, you must find a verdict of not guilty." This was a correct statement of the law: Rudy v. The Commonwealth, 128 Pa. 500; Commonwealth v. Andrews, 234 Pa. 597. The court further said in substance that if the defendant was gone from the store long enough to perpetrate the crime and return, referring to such time as fifteen to twenty minutes, then they might find him guilty. This was a proper explanation and called the attention of the jury to the true test of the alibi.

On the next morning after the shooting, a revolver, containing three 38-calibre cartridges and two empty shells, was found on a box over the wheel of a car standing on a switch about sixty rods up the track from the subway. And two days after the crime was committed an empty cartridge box was found in the defendant's room in his boarding house, with name and number corresponding to that on the cartridge found in the revolver. The court in commenting upon this circumstance said that "The Commonwealth has shown that this cartridge box was found in the room of the defendant." Several witnesses had so testified; but it is urged for defendant that the use of the word "shown" treated the fact as established, while the credibility of the testimony was for the jury. We see no merit in such contention. A proper definition of "shown" as used in the charge would be "pointed out or made known by evidence," and that accords with the dictionaries. The court did not say it had been conclusively shown, and the jury knew that

such fact rested upon oral testimony, and were instructed that, "The facts are to be found from the testimony as you recollect it." The court inadvertently stated that the doctor had testified to certain declarations as made by Morobito shortly after the shooting, when substantially such testimony had been given by other witnesses, but not by the doctor. The court's attention was not called to this mistake at the time and, therefore, it constitutes no ground for reversing the judgment: Commonwealth v. Razmus, 210 Pa. 609; Commonwealth v. Wasson, 42 Pa. Superior Ct. 38.

The so-called after-discovered evidence, as exhibited in the depositions, was largely cumulative, and with due diligence might have been discovered before the trial. There was no abuse of discretion in refusing to grant a new trial on that ground. Such refusal was so clearly a matter within the discretion of the court below that its action in this respect will not be reviewed in the absence of clear error: Knickerbocker Ice Co. v. Pa. R. R. Co., 253 Pa. 54, 66. And see Commonwealth v. Garrito, 222 Pa. 304. That the trial judge in passing upon the motion for a new trial considered the affidavit of a witness in explanation of his deposition affords no ground for reversing the judgment. The case depended to a considerable extent upon dying declarations, the weight of which was for the jury. "All the authorities agree that after the declarations have been admitted as dying declarations their weight and credibility are purely for the determination of the jury": 1 Ruling Case Law, page 547. Where such declarations are contradictory to each other, it is the duty of the jury to weigh them and to determine which if either is to be believed: Wharton's Criminal Evidence (10th Ed.), page 585. The question of guilt or innocence was for the jury to decide, subject to the approval of the trial judge. If guilty the case presents all the elements of first degree murder. Having considered and passed upon the alleged errors, our duty is performed.

The assignments of error are all overruled, the judgment is affirmed and the record is remitted for the purpose of execution.