391 A.2d 1307

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeffrey CRISTINA, Appellant.**

Supreme Court of Pennsylvania.

Argued March 14, 1978.

Decided Oct. 5, 1978.

Samuel J. Pasquarelli, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Stephanie McKinney, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

EAGEN, Chief Justice.

On June 29, 1976, Jeffrey Cristina was convicted by a jury in Allegheny County of robbery and of murder of the second degree. On the murder conviction, a sentence of life imprisonment was imposed. Sentence was suspended on the robbery conviction. An appeal from the judgment of sentence imposed on the murder conviction was filed in this Court. An appeal from the order imposed on the robbery conviction was filed in the Superior Court and later certified here. The charges against Cristina arose out of the death of Frank Slazinski, an eighty-two-year-old retired steel worker, from injuries incurred during a robbery in his apartment on December 10, 1975.

Cristina advances four alleged errors as grounds for an arrest of judgment or a new trial: (1) insufficiency of the evidence to sustain his convictions; (2) admission into evidence of a tape-recorded statement he made while in police custody; (3) failure of the court to charge that, since the Commonwealth made pretrial blood, flesh and hair tests and failed to introduce the results into evidence, the jury might

infer "that the results were unfavorable to the Commonwealth"; and, (4) a jury instruction that certain pretrial statements exculpating Cristina made by his alleged accomplice could be considered only for the purpose of impeaching the accomplice and not as substantive evidence. We have examined each of the asserted errors, and we affirm the judgment and order of the trial court.

We now turn our attention to the first issue, namely, was the evidence legally sufficient to sustain the jury's verdict.[1] The test is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, is it sufficient to enable the trier of fact to find every element of the crimes charged beyond a reasonable doubt. See *Commonwealth v. Bastone*, 466 Pa. 548, 353 A.2d 827 (1976).

Murder of the second degree is defined by the Crimes Code as follows:

"A criminal homicide constitutes murder of the second degree when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony."

18 Pa.C.S.A. § 2502(b) (Supp. 1978–79).

In our view, the evidence in the record is adequate to have enabled the jury to conclude that Cristina participated, either as a principal or an accomplice, in the robbery of Frank Slazinski, during the course of which Slazinski suffered injuries which resulted in his death. Thus, the evidence supports both convictions.

1. Cristina frames this question in terms of whether the trial court erred in overruling his demurrer to the Commonwealth's evidence. However, the correctness of this ruling is no longer an available issue since Cristina did not rest following the adverse ruling but instead, presented a defense. See *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Spanos*, 167 Pa.Super. 629, 76 A.2d 243 (1950). The question, when properly framed, is whether the trial court erred in refusing defendant's motion in arrest of judgment. In reviewing this issue, we consider the entire record, as required by the Act of June 15, 1951, P.L. 585, § 1, 19 P.S. § 871.

The Commonwealth's principal witness was William Pirozzi, who testified on direct examination as follows: On December 10, 1975, he, Pirozzi, agreed to help Jeffrey Cristina "rob somebody." They proceeded to the apartment building where Slazinski resided and Cristina kicked in a panel of the door to the front entrance and crawled through the opening. Cristina then opened the door from the inside, allowing Pirozzi to enter. Pirozzi remained in the vestibule while Cristina walked down a hallway, kicked open and entered the door to Slazinski's apartment. Pirozzi heard a voice yelling "get out," a person moaning, a cracking sound and a thump. Five minutes later Cristina emerged from the apartment carrying a television set and some money. He gave five dollars to Pirozzi and told him that he "hit the guy a couple of times" but "he will be all right." At that time Pirozzi observed that Cristina carried a blackjack in his belt. Pirozzi and Cristina left the building and went separate ways.[2]

During direct examination, Pirozzi also testified that, when questioned by the police in February of 1976 about the Slazinski crimes, he lied and said one Red Phillips and not Cristina committed the robbery and the assault.

During cross-examination, counsel for Cristina introduced into evidence two recorded statements Pirozzi gave to the police in February of 1976, wherein he exculpated Cristina and said Phillips was the robber and assaulter of Slazinski. During further cross-examination, Pirozzi's truthfulness was further brought into question by demonstrated inconsistencies in a third recorded statement given to the police, also in February of 1976.

Then during redirect examination, Pirozzi unexpectedly stated that neither his testimony on direct examination nor his statements to the police in February of 1976 were true.

2. Later, on December 10, 1975, police officers went to the Slazinski apartment on an unrelated matter and found him lying on the floor suffering from multiple force-imposed wounds. The apartment was in disarray, and pieces of a broken walking stick were on the floor near where Slazinski lay. He was taken to a hospital and died from the wounds on December 14.

However, later in the redirect examination, he stated that his direct testimony naming Cristina as the guilty party was the truth.[3]

Cristina contends that Pirozzi's testimony was so unreliable and contradictory that it should be considered incredible as a matter of law, and the jury should not have been permitted to return a guilty verdict on the basis of such testimony.

Credibility is a factual issue and is most appropriately resolved in the first instance by the trier of fact and reviewed on post-trial motions by the trial court which has also observed the witnesses as they testified. Assessment of a witness's credibility is not an appropriate function of appellate review. See *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976) and cases cited.

However, where evidence offered to support guilt of a crime is so unreliable and/or contradictory as to make a verdict based thereon pure conjecture rather than the product of reasonable reconciliation, an appellate court is justified in concluding that it was reversible error to allow the jury to return a guilty verdict based thereon. See *Commonwealth v. Farquharson, supra*; *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973).

After a careful study of the record, we are not convinced Pirozzi's testimony was so contradictory as to render it incapable of reasonable reconciliation. Moreover, while an accomplice's testimony must be received with caution, see *Commonwealth v. Farquharson, supra*; *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Vorhauer*, 232 Pa.Super. 84, 331 A.2d 815 (1974), a jury may convict on the uncorroborated testimony of an accomplice. *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972).

3. A careful reading of the record suggests that Pirozzi may have been confused by the questioning and may not have meant to refer to his earlier trial testimony as untrue. More than likely, Pirozzi's response to the prosecutor's question referred only to his pretrial statements as untrue.

██  Further, although Pirozzi's testimony was the only evidence offered by the Commonwealth to establish Cristina as the actual assailant, Cristina, in his trial testimony, corroborated his participation in the criminal episode. During direct examination, Cristina testified as follows:

On December 10, 1975, Cristina agreed to help Pirozzi break into "some guy's apartment." Upon arriving at the front door of the apartment building, Cristina kicked in a panel of the door, crawled through the hole and opened the door for Pirozzi. Cristina then stood in the vestibule while Pirozzi walked down the hallway toward Slazinski's apartment until he was out of Cristina's view. Cristina heard the sound of splintering wood and a man's voice ordering someone to leave. As Cristina turned to leave the building, he heard a cracking sound. He went directly home and had no further contact with Pirozzi until two days later.[4]

Thus, by his own admission, Cristina was an accomplice to the robbery-murder, as defined in 18 Pa.C.S.A. § 306:

"A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

\*   \*   \*   \*

(ii) aids or agrees or attempts to aid such other person in planning or committing it  .  .  .  ."

Therefore, even if the jury chose to believe Cristina's testimony that he broke into the building and remained standing just inside the door as Pirozzi entered the victim's apartment, there was sufficient evidence from which the jury could have found Cristina guilty of robbery and of murder under the felony-murder doctrine. See *Common-*

---

4. Cristina testified further that Pirozzi later told him he, Pirozzi, had returned to the building with Red Phillips and Red had hit Slazinski with a blackjack. The record indicates that, pursuant to statements given to the police by Pirozzi and Cristina, Red Phillips was arrested and charged with Slazinski's homicide. The charges against Phillips were later withdrawn, and he was released.

*wealth v. Dankel,* 450 Pa. 437, 439 n.3, 301 A.2d 365, 367 n.3 (1973).

Next, Cristina contends that the court erred in allowing the Commonwealth to introduce and play for the jury, as part of its case-in-chief, a tape-recorded statement made by him prior to trial which contained information the Commonwealth knew to be false. In the contested statement, given after he was arrested and charged with the robbery-murder, Cristina admitted breaking into both the apartment building and the victim's apartment and claimed to have stood by while Red Phillips struck the victim.[5]

Cristina argues that the Commonwealth may not offer, as substantive evidence, evidence which it knows to be false, and that the tape-recorded statement was admissible only for the purpose of impeaching his trial testimony in the event he chose to testify. This argument fails for the following reasons:

■ The rule regarding the use of prior inconsistent statements solely for impeaching a witness's credibility, see *Commonwealth v. Brewer,* 479 Pa. 558, 388 A.2d 1071 (1978); *Commonwealth v. Knudsen,* 443 Pa. 412, 278 A.2d 881 (1971), is not applicable to extra judicial statements made by the accused. A defendant's voluntary, pretrial admissions or confessions which comply with constitutional safeguards are admissible as substantive evidence under the admission exception to the hearsay rule, regardless of whether the defendant testifies. *Commonwealth v. Tervalon, supra.* See also 10A P.L.E. Criminal Law §§ 291, 311.

■ Even an admission or confession shown to be false may be admissible to prove something other than the matter falsely confessed. See 23 C.J.S. Criminal Law § 817(1). This Court has held that prior false or contradicto-

5. As stated in n.4, *supra,* Phillips was arrested and charged with the robbery and homicide of Frank Slazinski but those charges were subsequently withdrawn. Thus, the Commonwealth was aware that Cristina's statement naming Phillips as the actual assailant was false. After a tape recording of the statement was played to the jury, the prosecution elicited this information during direct examination of the police officer who took the statement.

ry or conflicting statements by the accused are admissible "since the jury may infer therefrom that they were made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt." *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A.2d 464, 476 (1955). Accord *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960). Thus, in the instant case, that part of Cristina's statement, which exculpated him of striking the victim and falsely named someone else as the actual assailant, was admissible as probative of his guilt.

Furthermore, as the court below noted, part of Cristina's statement inculpated him as an accomplice in the robbery-murder. That part of the statement, which he never denied making, constituted an admission against interest and, as such, had independent probative value. See *Commonwealth v. Turner*, 389 Pa. 239, 267, 133 A.2d 187, 199 (1957); 10A P.L.E. Criminal Law § 311. See also *Commonwealth v. McKinney*, 453 Pa. 10, 306 A.2d 305 (1973).

Next, Cristina maintains the trial court erred in failing to instruct the jury it might infer that results of blood, flesh and hair tests were unfavorable to the Commonwealth's case since they were not introduced at trial.

The applicable law of this question was stated in *Commonwealth v. Moore*, 453 Pa. 302, 305, 309 A.2d 569, 570 (1973):

"Generally, when a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable. See McCormick, Law of Evidence, 534 (1954). See also *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), and *Commonwealth v. Wright*, 444 Pa. 536, 282 A.2d 323 (1971)."

■ In the instant case, the defense learned on the first day of trial, during cross-examination of a homicide detective, that blood, flesh and hair tests had been conducted and the results had been sent to the Homicide Division. When the Commonwealth rested without producing the test results, the defense neither requested the results nor attempted to subpoena the laboratory technician who conducted the tests. There is nothing in the record to show that the test results were not available to defense counsel by subpoena or otherwise. Compare *Commonwealth v. Jones*, 455 Pa. 488, 317 A.2d 233 (1974). Thus, the trial judge properly refused to charge that failure to produce the test results warranted an inference unfavorable to the Commonwealth since the defendant was aware the evidence existed and failed to request it. See *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976) (opinion announcing the judgment); *Commonwealth v. Jones*, 455 Pa. 488, 317 A.2d 233 (1974); *Commonwealth v. Moore, supra* ; *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973).

■ Finally, Cristina contends that the trial court erred in instructing the jury that a letter written by his accomplice, Pirozzi, exculpating Cristina could be considered solely for the purpose of impeaching Pirozzi's trial testimony and not as substantive evidence of Cristina's innocence.

William Pirozzi, the Commonwealth's principal witness, was allegedly Cristina's accomplice in the robbery-murder. During direct examination, he testified Cristina was the actual assailant while his own involvement was secondary. During cross-examination, Pirozzi admitted writing a letter, while in jail awaiting trial, in which he stated Cristina was involved initially, but left the scene before the robbery-murder was perpetrated by Pirozzi and a third person, one Red Phillips.

The trial court refused to charge the letter could be considered as substantive evidence of Cristina's innocence on the basis that the letter amounted to a prior inconsistent statement by a trial witness and was thus admissible only for purposes of impeachment. In this appeal, Cristina ar-

gues the letter was admissible as substantive evidence as an exception to the hearsay rule inasmuch as it was against the declarant's penal interest.

This Court has never adopted the view that every declaration against penal interest must be admitted into evidence. See *Commonwealth v. Lewis*, 472 Pa. 235, 372 A.2d 399 (1977) (plurality opinion); *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974) (opinion announcing the judgment). In *Commonwealth v. Nash, supra*, five justices agreed that, under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), a declaration against penal interest must be admitted into evidence where the evidence is critical to the defense of the accused and its trustworthiness has been demonstrated.

The letter in this case does not qualify for admission as a declaration against interest under *Chambers* and *Nash* since it was demonstrably unreliable and was not critical to Cristina's defense. The record does not disclose the person to whom Pirozzi's letter exculpating Cristina was addressed. In addition, three other letters written by Pirozzi, while in jail awaiting trial, were introduced into evidence by the defense. In one of those letters Pirozzi stated that neither he nor Cristina was involved in the robbery-murder. In two of the letters Pirozzi signed Cristina's name and stated Cristina did the actual beating while Pirozzi acted as a lookout. Further, Pirozzi testified at trial that all four letters were untrue and that he wrote them to "take the heat off" himself and get himself "back on the street."

Moreover, there was no corroboration of the truth of the letter by other evidence as was the case in *Chambers* and *Nash*. In fact, Pirozzi testified at trial that two extra judicial statements he made to the police containing substantially the same version of the criminal episode as was contained in the letter were also untrue. Most importantly, the record reveals that Red Phillips, the person named in the letter as Slazinski's assailant, was arrested and charged with the robbery-murder but was subsequently released.

Furthermore, we cannot say the disputed evidence was critical to the defense since Cristina himself testified he entered the building and was present while Pirozzi entered the victim's apartment.

We conclude that the letter had no assurance of trustworthiness, was not critical to Cristina's defense, and was not admissible as a declaration against Pirozzi's penal interest and, thus, as substantive evidence. The court, therefore, properly charged the jury to consider the letter for impeachment purposes only.

Judgment and order affirmed.

LARSEN, J., did not participate in the consideration or decision of this case.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.