405 A.2d 1236

**COMMONWEALTH of Pennsylvania**

v.

**Comer GLASS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 24, 1979.

Decided July 6, 1979.

Reargument Denied Oct. 1, 1979.

336

Timothy A. Crawford, Jr., Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., William C. Turnoff, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

Appellant raises several issues in this direct appeal from the judgment of life sentence imposed after his conviction by a jury of murder in the first degree. Post trial motions were argued and denied.

■ Appellant's first contention is that the evidence was insufficient as a matter of law to sustain his conviction of first degree murder. This contention is without merit. Although there were no eyewitnesses to the actual killing in question, the circumstantial evidence reveals the following facts: On the evening of October 12, 1975, Ms. Billie Ann Morris was stabbed to death in a vacant lot across the street from 5973 North Lambert Street in Philadelphia. The Philadelphia medical examiner determined upon conducting a post mortem examination of the victim that death resulted from a single stab wound to the left chest area and that the manner of death was homicide. In the absence of actual eyewitness testimony, the Commonwealth presented testimony of three women who were in the company of Ms. Morris immediately before the killing, and testimony of two neighbors who witnessed relevant occurrences in the vacant lot at about the time of the stabbing.

Ms. Deborah Young testified for the prosecution that she had spent the day with Ms. Morris and two other women, Ms. Doris Dingle and Ms. Julia Ruff. On the evening of October 12, 1975, these four women were present in Ms. Young's home when appellant arrived and asked to see Ms. Morris. Ms. Young testified that she knew the appellant before that night and that he was a former lover of Ms. Morris. Appellant and Morris conversed briefly, the appellant departed and returned shortly thereafter. After another brief conversation, Ms. Morris and appellant left the house. At that time, the victim was wearing a white shawl. A telephone call from a neighbor caused Ms. Young to venture outside where she observed a pool of blood in the lot. She then proceeded immediately to Germantown Hospital.

Ms. Doris Dingle's testimony corroborated Ms. Young's testimony; however, Ms. Dingle observed that keys to the victim's car were found in the puddle of blood. Ms. Dingle testified that she had warned Ms. Morris against leaving with the appellant, and that she had answered her warning by saying, "He will not do anything else to me, he will not hurt me anymore." Ms. Dingle also testified that on the day before the killing she heard the appellant state: "Women do what I say do, if not I kill them." This statement was made in the presence of a few women and was apparently directed at Ms. Morris.

Ms. Aiesha Abdulmalik, one of the two neighbors to testify, testified to looking out of her window after hearing a woman's screams on the night in question. At that time she observed a blue and white Chevrolet Monte Carlo parked on the street; she had observed the same car before, parked in front of Ms. Young's house. She also saw "two silhouettes, one male and one female. The female had a white shawl and got in the car and it drove off." Ms. Abdulmalik went outside immediately, saw blood on the lot and then telephoned Ms. Young.

Mr. Harvey Byrd, another neighbor, testified that he too looked out his window immediately after hearing a woman

*scream.* He saw the blue and white Monte Carlo and saw a man standing near the car. He said that the man looked directly at him, picked the body of a woman off the ground, placed the body in the car, and then drove off.

Evelyn Jones, the sister of the deceased, testified for the prosecution that she heard the appellant state in December of 1974 that he would "get" the victim. She testified to seeing the appellant punch the victim twice in the jaw and once in the leg, without any apparent provocation on January 3, 1975. She testified that after this incident the appellant was forcibly removed from the house, but that he returned later and fired a pistol breaking a window in the house.

Officer Ronald McClane testified that at 12:30 a. m. on January 3, 1975 he stopped an automobile because of information received from a complainant. The driver of that car identified himself as Comer Glass and had in his possession a .32 calibre revolver containing four live rounds and one spent cartridge.

A registered nurse employee of Germantown Hospital testified that appellant brought the victim into the emergency ward the night of October 12.

Appellant gave a statement to homicide detectives following his arrest which denied any knowledge of the stabbing, but which placed him at the scene of the crime immediately before and after the stabbing. The statement also admitted the fact of his owning and driving a blue and white Monte Carlo on the night in question. In the statement the appellant stated that he and the victim agreed to go to his house in separate cars, that he had driven home in his car, but that the victim never arrived. He stated that he returned to the lot where he saw the victim lying there after having been stabbed.

The testimony of a detective who travelled the route allegedly taken by appellant, together with the testimony of the witnesses who observed a man standing by a blue and white Monte Carlo seconds after hearing a woman's screams,

cast doubt on appellant's ability to have made this trip in so short a time.

The appellant neither took the stand nor offered evidence on his own behalf.

> The test of sufficiency of the evidence is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.
>
> *Commonwealth v. Hamm*, 474 Pa. 487, 494, 378 A.2d 1219, 1222 (1977). *See also, Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Johnson*, 458 Pa. 23, 326 A.2d 315 (1974).

As we review the evidence, this Court must consider the evidence in a light most favorable to the verdict winner, in this instance, the Commonwealth. *See Commonwealth v. Brown*, 467 Pa. 388, 357 A.2d 147 (1976); *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975).

There is no requirement that a killing, or a first degree murder for that matter, be proven by positive eyewitness testimony. Circumstantial evidence suffices to prove any element, or all the elements of a crime. *See e. g., Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972); *Commonwealth v. Chester*, 410 Pa. 45, 188 A.2d 323 (1963). Finally, contrary to appellant's contentions, the law in Pennsylvania is clear that the intentional use of a deadly weapon upon a vital area of the body of the victim is sufficient to raise a presumption that the killing was first degree murder, and not merely a lesser degree of homicide as appellant suggests. *See, Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976) (citing many cases); *Commonwealth v. Gibbs*, 366 Pa. 182, 76 A.2d 608 (1950); *Commonwealth v. Drum*, 58 Pa. 9 (1868). It is clear to us, after a thorough review of the record in this case, that there is no merit to appellant's contention that the evidence was insuf-

ficient for a jury to have convicted him of first degree murder.

Appellant's next contention is that the trial court committed reversible error by permitting testimony concerning alleged prior acts of violence committed by the appellant. Appellant objects specifically to two items of evidence. First, appellant objects to the testimony of Evelyn Jones, the sister of the victim, to the effect that some ten months before the killing the appellant punched, kicked and threatened to "get" the victim, and that the appellant threatened to kill the victim on the day before the killing if she would not do as he ordered. Second, appellant objects to the testimony of the police officer concerning the circumstances of his arrest some ten months before the night in question, after appellant allegedly fired a bullet through the window of the house in which the victim had been staying.

In *Commonwealth v. Ulatoski*, 472 Pa. 53, 60–61, 371 A.2d 186, 190 (1977), (citing abundant authority) we held:

> On many occasions, this Court stated that evidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive or malice. Evidence of prior occurrences in which the accused threatened, assaulted, or quarrelled with the decedent may be admissible for this purpose.

(footnotes omitted).

The appellant argues that *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976) developed a rule that would disallow introduction of an isolated instance of disharmony to prove ill will, malice or motive. But in this case, there is more than one instance of prior ill will, threats and acts of violence. There are three occurrences in this case which indicate that within the past ten months a pattern of ill will and disharmony existed between the deceased and the appellant. In *Baker*, testimony of physical abuse and disharmony between the defendant and the victim was permitted as "another instance in the chain of evidence produced by the Commonwealth to establish the relationship that existed

between the appellant and the deceased." 466 Pa. 392, 353 A.2d at 411.

The fact that these violent episodes occurred some time before the murder in question affects their weight as evidence, but not their admissibility.

Although evidence of [prior occurrences] which is too remote is not properly admissible . . . it is generally true that remoteness of the prior instances of hostility and strained relations affects the weight of that evidence and not its admissibility.

*Commonwealth v. Ulatoski, supra* 472 Pa. at 62, 371 A.2d at 191, quoting *Commonwealth v. Petrakovich*, 459 Pa. 511, 524, 329 A.2d 844, 850 (1974). *See also, Commonwealth v. Jones*, 269 Pa. 589, 113 A. 57 (1921); *Commonwealth v. Delfino*, 259 Pa. 272, 102 A. 949 (1918).

In *Ulatoski*, the prior acts of physical abuse occurred approximately 17 months before the death of the victim; we are concerned here with acts occurring approximately ten months previous to the murder. We cannot rule as a matter of law that this amount of time is so remote as to affect the admissibility of this evidence.

Appellant also objects to this evidence on the ground that it is evidence of another unrelated crime or of unrelated unlawful activity. Appellant suggests that the evidence of appellant's former arrest following his firing of the gun through the house window was offered as evidence of unconnected criminal activity introduced to create or demonstrate a predisposition toward criminality. Appellant correctly states the general rule of this Commonwealth prohibiting evidence of unrelated criminality to prove guilt of the crime being presently charged. *See generally, Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978); *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Irwin*, 475 Pa. 616, 381 A.2d 444 (1977). However, the rule, like many other general rules, is subject to exceptions. Evidence of prior unlawful activity is admissible if related to the crime charged in such a way as to establish motive, ill will or malice. *Commonwealth v. Brown*, 482 Pa. 130, 393

A.2d 414 (1978); *Commonwealth v. Martin, supra*; *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) *cert. denied sub nom. Jones v. Pennsylvania*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). The testimony relating to the prior arrest was an integral part of the evidence establishing the accused's ill will toward the victim.

■ Appellant asserts that the trial court erred in failing to include a cautionary instruction to the effect that the evidence of prior acts of violence and unlawful activity, although admissible to prove motive, was not to be considered in establishing guilt for the crime for which appellant was charged. Although given the opportunity to take exception to the court's instructions, appellant failed to object on this ground. This issue was not included in his post-trial motions. The opinion of the trial court in response to appellant's post-trial motions fails to mention this issue. Therefore, no timely objection having been made to the trial court which would have given that court an opportunity to cure the alleged harm, the issue is waived. *See, Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).[1]

■ Appellant's final contention is that he received ineffective assistance of counsel because his trial counsel failed to object to allegedly prejudicial statements made by the prosecutor during his closing argument to the jury and also failed to preserve these objections in his post-trial motions. Appellant, having been appointed new counsel on this direct appeal, raises two instances of allegedly improper closing argument.[2]

1. Counsel's objection is not couched in terms of alleged ineffective assistance of counsel.

2. Appellant's ineffectiveness claim is properly before us on direct appeal. In *Commonwealth v. Hubbard*, 472 Pa. 259, 276–77 n.6, 372 A.2d 687, 695 n.6 (1977), we held that "effectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant."

■ First, appellant objects to the prosecutor's reference during closing argument that appellant had severely beaten the victim.

This is a legitimate statement based on the facts already in the record, to wit, the testimony of Ms. Evelyn Jones that the appellant had punched the deceased twice in the jaw and once in the leg. While some of us may not consider such a beating to be severe, it cannot be said that such a characterization exceeded the boundaries of fair comment upon the facts of record. "The prosecutor may argue all reasonable inferences from evidence in the record." *Commonwealth v. Lipscomb*, 455 Pa. 525, 529 n.3, 317 A.2d 205, 207 n.3 (1974) *quoting* The American Bar Association Project on Standards for Criminal Justice, The Prosecution Function, § 5.8(a) (Approved Draft, 1971).

■ In assessing the effectiveness of trial counsel, our task is to examine the record to see whether it supports a conclusion that the particular course chosen by counsel had some reasonable basis to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Before inquiring into the basis for counsel's failure to raise or pursue a certain issue at trial, we must determine if the issue is of arguable merit. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard, supra.* We have already determined that the prosecutor's depiction of the beating of the deceased by appellant as severe was legitimate; therefore, any objection to this argument would have been without merit. A finding of ineffectiveness cannot be premised upon counsel's failure to pursue and preserve a meritless issue. *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Smith*, 478 Pa. 76, 385 A.2d 1320 (1978); *Commonwealth v. Hubbard, supra.*

Appellant's second allegation of ineffective assistance of counsel concerns the failure of trial counsel to object to the prosecutor's statement during closing argument: "I suggest to you that the story that Comer Glass told the police was

made out of a cold lie." [3] This comment by the prosecutor was made in reference to the written statement of Comer Glass which admitted many facts placing him at the scene of the crime moments before and after the stabbing of the victim, and which admitted his owning and driving a blue and white Monte Carlo on the night in question. In the midst of all these inculpatory admissions, Comer Glass within the same statement attempted to exculpate himself by denying any knowledge of the manner of the victim's fatal injury.

■ It is settled law in this Commonwealth that a false denial of guilt by an accused is admissible as substantive evidence of his consciousness of guilt. *Commonwealth v. Cristina*, 481 Pa. 44, 391 A.2d 1307, 1311–12 (1978); *Commonwealth v. Bolish*, 381 Pa. 500, 524, 113 A.2d 464, 476 (1955); *Commonwealth v. Lowry*, 374 Pa. 594, 601, 98 A.2d 733, 736 (1953); *Commonwealth v. Homeyer*, 373 Pa. 150, 158–59, 94 A.2d 743, 746 (1953); *Commonwealth v. Spardute*, 278 Pa. 37, 43, 122 A. 161 (1923). We have held:

. . . false or contradictory statements by the accused are admissible since the jury may infer therefrom that they were made with an intent to divert suspicion or to

**3.** There is some dispute as to the actual words used by the prosecutor in his closing argument. The Commonwealth contends that the prosecutor said: "made up out of whole cloth" instead of referring to appellant's denial as a "cold lie". Following its examination of the trial transcript the Commonwealth filed a motion to correct the written notes of testimony. The trial court granted this motion, ordering a deletion of the term "cold lie" and a substitution of the "whole cloth" language. Appellant challenges the procedure implemented by the Commonwealth to amend the notes of testimony and argues that the action by the trial judge was not in accordance with the Act of May 11, 1911, P.L. 279, 12 P.S. § 1199. Appellant contends that the correction was prejudicial because the words, "cold lie" as they were allegedly spoken, were prejudicial to him. In our view, it makes no difference whether prosecutor referred to appellant's denial as a cold lie or as made up out of whole cloth. Both versions convey the thought that the denial was a fabrication. However, to insure that appellant will not feel prejudiced by whatever subtle difference he perceives between the two versions, we will proceed as though the words "cold lie" were actually used, as they appear in the original, uncorrected transcript.

mislead the police or other authorities, or to establish an alibi or innocence, and hence are indicatory of guilt. *Commonwealth v. Bolish, supra,* 381 Pa. at 524, 113 A.2d at 476. Professor Wigmore has written: *"False exculpatory statements* made to law enforcement officers constitute independent circumstantial evidence of guilty consciousness." II Wigmore, Evidence § 278 (3d ed. Supp.1979) (emphasis in original).

Appellant's statement was more than adequate to isolate him as the killer of the deceased. The other circumstantial evidence presented by the Commonwealth overwhelmingly established that appellant was indeed the killer of the deceased. Appellant's weak denial became transparently false in the face of his own admissions and in light of the weight of the other circumstantial evidence of his guilt. In brief, appellant's written statement was an attempt to exculpate himself by means of an obvious falsehood which became circumstantial evidence of his consciousness of guilt.

█ Appellant does not challenge the admissibility of his admission on the grounds that it was made involuntarily or that it was obtained in violation of any constitutional or other rights of the accused. As a voluntary extra-judicial admission, appellant's statement was admissible evidence under the exception to the hearsay rule for admissions. *Commonwealth v. Cristina,* supra, 481 Pa. at 52, 391 A.2d at 1311; *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). There can be no question that appellant's statement was relevant and admissible evidence tending to prove that he was the murderer.

█ The prosecutor's closing argument must be limited to facts of record and legitimate inferences therefrom. *See, Commonwealth v. Lipscomb, supra.* We have already determined that it was a legitimate inference that appellant's denial was false, in light of his admissions within the same statement, and in light of the other circumstantial evidence of his guilt. It was therefore entirely proper for

the prosecutor in summation to suggest that appellant's denial of guilt was false.

█ Having determined that the prosecutor's comments on closing argument were entirely proper, we cannot conclude that appellant's trial counsel was in any way ineffective for failing to object to these remarks. As previously stated, counsel cannot be held to be ineffective for failing to pursue a meritless claim. *Commonwealth v. Martin, supra* ; *Commonwealth v. Smith, supra* ; *Commonwealth v. Hubbard, supra*.

Therefore, the judgment of sentence of the Court of Common Pleas is hereby affirmed.

EAGEN, C. J., and MANDERINO and FLAHERTY, JJ., concur in the result.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

I must dissent. Whether the district attorney labeled appellant's statement a "cold lie" or "made up out of whole cloth," the district attorney's conduct simply is inexcusable. The ABA Standards expressly condemn this very prosecutorial misconduct:

"It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." ABA Standards Relating to the Prosecution Function, § 5.8(b) (Approved Draft, 1971).

Repeatedly, cases of this Court abide by this standard and grant relief where prosecuting attorneys have so disparaged the defendant. See *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979) (defendant's version of events branded a "big lie"); *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976) ("apparently counsel does not believe his own defendant"); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971) (defendant's testimony on cross-examination characterized as "malicious lie"). I can see no reasonable basis for trial counsel's failure to object to these remarks.

Cf. *Commonwealth v. Black*, 480 Pa. 394, 390 A.2d 750 (1978) (no basis for failing to object to regularly condemned prosecutional tactic "of directing juries' attention to the rear of the courtroom to wait for the deceased to walk through the door"). The district attorney's attempt to disparage the defendant's credibility was wholly unnecessary and simply has no place in the courts of this Commonwealth.

I would, unlike the majority, grant appellant a new trial.